Irene Karbelashvili, State Bar Number 232223
Law Office of Irene Karbelashvili
12 South First Street, Suite 413
San Jose, CA 95113
Telephone: (408) 295-0137
Fax: (408) 295-0142

Kenneth J. Pinto, State Bar Number 221422
Law Office of Kenneth J. Pinto
12 South First Street, Suite 713
San Jose, CA 95113
Telephone: (408) 289-1765
Fax: (408) 289-1754

Attorneys for RICHARD JOHNSON, Plaintiff

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RICHARD JOHNSON,<br>　　　　　Plaintiff,<br><br>vs.<br><br>HYONA HWANG, an individual, a/k/a HYON CHU HWANG, d/b/a SEN DAI SUSHI; MINH NGO, an individual, d/b/a DONUT BASKET; FRANK SCHULZE, TRUSTEE OF THE FRANK SCHULZE LIVING TRUST; and DOES 1-20 inclusive,<br>　　　　　Defendants. | Case No. 5:14-CV-00121-EJD<br><br>***Civil Rights***<br><br>**FIRST AMENDED COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES: DENIAL OF CIVIL RIGHTS AND ACCESS TO PUBLIC FACILITIES TO PHYSICALLY DISABLED PERSONS, PER FEDERAL AND CALIFORNIA STATUTES (INCLUDING CIVIL CODE §§ 51, 52, 54, 54.1, 54.3, AND § 55; AND HEALTH & SAFETY CODE §§ 19955 ET SEQ.); INJUNCTIVE RELIEF PER TITLE III, AMERICANS WITH DISABILITIES ACT OF 1990** |

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 1 of 24

## I. SUMMARY

1. This is a civil rights action by Plaintiff Richard Johnson ("Johnson") for discrimination at the building, structure, facility, complex, property, land, development, and/or surrounding business complexes known as:

- Sen Dai Sushi

  224 North Abel Street,

  Milpitas, California 95035, (hereinafter the "Sushi Facility")

- Donut Basket

  242 North Abel Street,

  Milpitas, California 95035, (hereinafter the "Donut Facility")

- Strip Mall

  224-242 North Abel Street

  Milpitas, California 95035, (hereinafter the "Mall")

(hereinafter collectively, "Facilities")

2. Pursuant to the Americans with Disabilities Act of 1990 (42 U.S.C. §§12101*et seq.)*, and related California statutes, Johnson seeks damages, injunctive and declaratory relief, and attorney fees and costs, against:

- Hyona Hwang, an individual, a/k/a Hyon Chu Hwang, d/b/a Sen Dai Sushi, (hereinafter Hwang)

- Minh Ngo, an individual, d/b/a Donut Basket, (hereinafter the "Ngo");

- Frank Schulze, Trustee of the Frank Schulze Living Trust, (hereinafter the "Schulze").

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 2 of 24

1 • DOES 1-20, inclusive (hereinafter the "DOES 1-20 Defendants")

2 (hereinafter collectively, "Defendants")

## II. JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for ADA claims.

4. Supplemental jurisdiction for claims brought under parallel California law, arising from the same nucleus of operative facts, is predicated on 28 U.S.C. § 1367.

5. Johnson's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## III. VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Northern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

## IV. PARTIES

7. Hwang owns, operates, manages, and/or leases the Sushi Facility.

8. Ngo owns, operates, manages, and/or leases the Donut Facility.

9. Schulze owns, operates, manages, and/or leases the Mall.

10. DOES 1-20 Defendants own, operate, manage, and/or lease the Facilities, and consist of a person (or persons), firm, and/or corporation. The true names and capacities of Defendants DOES 1 through 20, inclusive, are unknown to Johnson who therefore sues said defendants by such fictitious names. Johnson is informed and believes that each of the defendants herein designated as a DOE is legally responsible in some manner for the events and happenings herein referred to and caused injury and damages proximately thereby to Johnson; Johnson prays leave of Court to amend this Complaint to show such true names and capacities when the same have been ascertained.

11. Johnson is informed and believes that each of the Defendants, DOES 1through 20 inclusive is the agent, ostensible agent, alter ego, master, servant, trustor, trustee, employer,

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 3 of 24

employee, representative, franchiser, franchisee, lessor, lessee, joint venturer, parent, subsidiary, affiliate, related entity, partner, and/or associate, or such similar capacity, of each of the other Defendants, and was at all times acting and performing, or failing to act or perform, within the course and scope of such similar aforementioned capacities, and with the authorization, consent, permission or ratification of each of the other Defendants, and is personally responsible in some manner for the acts and omissions of the other Defendants in proximately causing the violations and damages complained of herein, and have participated, directed, and have ostensibly and/or directly approved or ratified each of the acts or omissions of each of the other Defendants, as herein described.

12. Johnson is a paraplegic who is unable to walk or stand, and requires the use of a wheelchair when traveling about in public. Johnson possesses a DMV issued disabled parking placard and is entitled to park in disabled accessible parking spaces, including van accessible parking spaces, and to travel on and along public paths of travel between such parking facilities and areas to which the general public is invited. He is also entitled to fully accessible facilities with the public areas of the subject strip mall. Consequently, Johnson is "physically disabled," as defined by all applicable California and United States laws, and a member of the public whose rights are protected by these laws. Johnson is, and at all times relevant hereto was, a resident of California.

## V. FACTS

13. The Sushi Facility is a sales or retail establishment as defined under Title III of the ADA, 42 U.S.C. § 121817(B), and California civil rights laws. Cal. Civ. Code § § 51 *et seq.*, and Health & Safety Code § 19955 *et seq*. The Sushi Facility is open to the public, intended for nonresidential use and its operation affects commerce.

14. The Donut Facility is a sales or retail establishment as defined under Title III of the ADA, 42 U.S.C. § 121817(B), and California civil rights laws. Cal. Civ. Code § § 51 *et seq.*, and Health & Safety Code § 19955 *et seq*. The Donut Facility is open to the public, intended for nonresidential use and its operation affects commerce.

15. The Mall is a sales or retail establishment as defined under Title III of the ADA,

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 4 of 24

42 U.S.C. § 121817 (B) and (E), and California civil rights laws. Cal. Civ. Code § § 51 *et seq.*, and Health & Safety Code § 19955 *et seq*. The Mall is open to the public, intended for non-residential use and its operation affects commerce.

16. Johnson visited the Mall on several occasions and encountered barriers (both physical and intangible) that interfered with, if not outright denied, his ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the Facilities.

The last visit was on December 19, 2013. On each and every visit Johnson had difficulty accessing the Facilities' entrances because the ramp from the parking lot to the sidewalk was difficult to maneuver and dangerous. The design of the ramp made Johnson concerned that he could become unstable and tip over while going up the ramp.

17. Johnson found that he had difficulty getting through the door of Sushi Facility, because the door was hard to open and it closed quickly behind him onto his wheelchair. Once inside the Sushi Facility, Johnson found that he could not sit at the counter because it was too high. Johnson decided that he would use the bathroom but he had difficulty getting to the bathroom because he had to travel down a hallway with a 90 degree turn. The first part of the hall way before the turn was obstructed with a rack which made it hard for him to get through the hallway. After making the turn to get to the bathroom, Johnson encountered clutter near the entrance of the bathroom making it difficult to access the bathroom. When Johnson attempted to seat himself at a table for his lunch he discovered a table that had a pedestal. This pedestal prevented Johnson from being able to pull himself up close enough to the table to be properly seated.

18. At the Donut Facility Johnson again had difficulty getting through the door. The door was hard to open and closed quickly behind him onto his wheelchair. Once inside as Johnson was Johnson encountered a chair that was bolted down to the floor. This chair made it difficult for Johnson to maneuver inside the restaurant.

19. Johnson visited the Facilities and encountered barriers (both physical and intangible) that interfered with, if not outright denied, his ability to use and enjoy the goods, services, privileges, and accommodations offered at all of the facilities.

20. To the extent known by Johnson, the barriers at the Sushi Facility included, but

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 5 of 24

are not limited to, the following:

- All doors don't have the sign of accessibility;
- When doors are open they reduce the outside path of travel;
- Doors are heavier than 5lbs;
- Shelves in men's bathroom corridor are low;
- The corridor is narrow;
- No correct signage on men's bathroom door;
- No ADA seating;
- No path of travel between tables;
- No ADA counter seating;
- Seat cover dispenser is high;
- Seat cover dispenser is blocked;
- Toilet paper far from seat;
- Grab bar not in right position;
- Door stop on bathroom door;
- Main door close fast.

These barriers prevented Johnson from enjoying full and equal access at the Sushi Facility.

21. Johnson was also deterred from visiting the Sushi Facility because he knew that the Sushi Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). He continues to be deterred from visiting the Sushi Facility because of the future threats of injury created by these barriers.

22. To the extent known by Johnson, the barriers at the Donut Facility included, but are not limited to, the following:

- Carpet is tripping hazard;
- Door closes fast;
- Door heavy;
- Door stop on door;

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 6 of 24

- No signage on door;
- Counter high;
- No ADA tables;
- Reach range in fridge is high.

These barriers prevented Johnson from enjoying full and equal access at the Donut Facility

23. Johnson was also deterred from visiting the Donut Facility because he knew that the Donut Facility's goods, services, facilities, privileges, advantages, and accommodations were unavailable to physically disabled patrons (such as himself). He continues to be deterred from visiting the Donut Facility because of the future threats of injury created by these barriers.

24. To the extent known by Johnson, the barriers at the Mall included, but are not limited to, the following:

- No tow away sign;
- New curb does not differ in color from side walk;
- Parking lines are white;
- No (no parking) words on ground;
- No van sign;
- No $250 sign;
- Parking is short;
- Parking is narrow;
- Curb ramp wrong design, does not have upper landing and side flares over 8.3%;
- No path of travel from sidewalk to entrances;
- Parked cars reduce the sidewalk path of travel (no wheel stops);
- Parking appears to slope.

These barriers prevented Johnson from enjoying full and equal access at the Mall.

25. Johnson was also deterred from visiting the Mall because he knew that the Mall's goods, services, facilities, privileges, advantages, and accommodations were unavailable to

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 7 of 24

physically disabled patrons (such as himself). He continues to be deterred from visiting the Mall because of the future threats of injury created by these barriers.

26. Johnson also encountered barriers at the Facilities which violate state and federal law, but were unrelated to his disability. Nothing within this Complaint, however, should be construed as an allegation that Johnson is seeking to remove barriers unrelated to his disability.

27. Hwang knew that these elements and areas of the Sushi Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Hwang has the financial resources to remove these barriers from the Sushi Facility (without much difficulty or expense), and make the Sushi Facility accessible to the physically disabled. To date, however, Hwang refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

28. At all relevant times, Hwang has possessed and enjoyed sufficient control and authority to modify the Sushi Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Hwang has not removed such impediments and have not modified the Sushi Facility to conform to accessibility standards.

29. Ngo knew that these elements and areas of the Donut Facility were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover, Ngo has the financial resources to remove these barriers from the Donut Facility (without much difficulty or expense), and make the Donut Facility accessible to the physically disabled. To date, however, Ngo refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

30. At all relevant times, Ngo has possessed and enjoyed sufficient control and authority to modify the Donut Facility to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Ngo has not removed such impediments and have not modified the Donut Facility to conform to accessibility standards.

31. Schulze knew that these elements and areas of the Mall were inaccessible, violate state and federal law, and interfere with (or deny) access to the physically disabled. Moreover,

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Schulze has the financial resources to remove these barriers from the Mall (without much difficulty or expense), and make the Mall accessible to the physically disabled. To date, however, Schulze refuses to either remove those barriers or seek an unreasonable hardship exemption to excuse non-compliance.

32. At all relevant times, Schulze has possessed and enjoyed sufficient control and authority to modify the Mall to remove impediments to wheelchair access and to comply with the Americans with Disabilities Act Accessibility Guidelines and Title 24 regulations. Schulze hasnot removed such impediments and have not modified the Mall to conform to accessibility standards.

## VI. FIRST CLAIM

### Americans with Disabilities Act of 1990
### *Denial of "Full and Equal" Enjoyment and Use*
### (The Sushi Facility)

33. Johnson incorporates the allegations contained in paragraphs 1 through 32 for this claim.

34. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

35. The Hwang discriminated against Johnson by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Sushi Facility during each visit and each incident of deterrence.

### *Failure to Remove Architectural Barriers in an Existing Facility*

36. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9).

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 9 of 24

37. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id.* § 12182(b)(2)(A)(v).

38. Here, Johnson alleges that Hwang can easily remove the architectural barriers at the Sushi Facility without much difficulty or expense, and that Hwang violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

39. In the alternative, if it was not "readily achievable" for Hwang to remove the Sushi Facility's barriers, then Hwang violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### *Failure to Design and Construct an Accessible Facility*

40. On information and belief, the Sushi Facility was designed or constructed (or both) after January 26, 1992-independently triggering access requirements under Title III of the ADA.

41. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

42. Here, Hwang violated the ADA by designing or constructing (or both) the Sushi Facility in a manner that was not readily accessible to the physically disabled public, including Johnson, when it was structurally practical to do so.

### *Failure to Make an Altered Facility Accessible*

43. On information and belief, the Sushi Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

44. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

drinking fountains serving that area accessible to the maximum extent feasible. *Id.*

45. Here, Hwang altered the Sushi Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public, including Johnson, to the maximum extent feasible.

### *Failure to Modify Existing Policies and Procedures*

46. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

47. Here, Hwang violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Sushi Facility, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

48. Johnson seeks all relief available under the ADA (*i.e.,* injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

49. Johnson also seeks a finding from this Court (*i.e.,* declaratory relief) that Hwang violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

## VII. SECOND CLAIM
### Disabled Persons Act
### (The Sushi Facility)

50. Johnson incorporates the allegations contained in paragraphs 1 through 49 for this claim.

51. The Sushi Facility is a place of public accommodation and/or places to which the general public is invited and, as such, they are obligated to comply with the provisions of the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.*

52. The CDPA guarantees, inter alia, that persons with disabilities have the same right

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 11 of 24

as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. California Civil Code § 54.

53. The CDPA also guarantees, inter alia, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities. California Civil Code § 54.1(a)(1).

54. The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA, California Civil Code § 54.1(d).

55. Hwang has violated the CDPA by, inter alia, denying and/or interfering with Johnson right to full and equal access as other members of the general public to the accommodations, advantages, and its related facilities due to his disability.

56. Pursuant to the remedies, procedures, and rights set forth in California Civil Code §§ 54.3 and 55, Johnson prays for judgment as set forth below.

## VIII. THIRD CLAIM
### Unruh Civil Rights Act
### (The Sushi Facility)

57. Johnson incorporates the allegations contained in paragraphs 1 through 59 for this claim.

58. The Sushi Facility is a business establishment and, as such, must comply with the provisions of the Unruh Act, California Civil Code § 51 *et seq.*

59. The Unruh Act guarantees, *inter alia,* that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. California Civil Code § 51(b).

60. The Unruh Act also provides that a violation of the ADA, or of California state accessibility regulations, is a violation of the Unruh Act. California Civil Code § 51(f).

61. Hwang have violated the Unruh Act by, *inter alia,* denying, or aiding or inciting the denial of, Johnson's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at the Sushi Facilities.

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 12 of 24

62. Hwang have also violated the Unruh Act by denying, or aiding or inciting the denial of, Johnsons rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

63. Pursuant to the remedies, procedures, and rights set forth in California Civil Code § 52, Johnson prays for judgment as set forth below.


## IX. FOURTH CLAIM
### Denial of Full and Equal Access to Public Facilities
### (The Sushi Facility)

64. Johnson incorporates the allegations contained in paragraphs 1 through 63 for this claim.

65. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

66. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

67. Johnson alleges the Sushi Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Sushi Facility was not exempt under Health and Safety Code § 19956.

68. Hwang's non-compliance with these requirements at the Sushi Facility aggrieved (or potentially aggrieved) Johnson and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.


## X. FIFTH CLAIM
### Americans with Disabilities Act of 1990
### *Denial of "Full and Equal" Enjoyment and Use*

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 13 of 24

**(The Donut Facility)**

69. Johnson incorporates the allegations contained in paragraphs 1 through 68 for this claim.

70. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

71. Ngo discriminated against Johnson by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Donut Facility during each visit and each incident of deterrence.

### *Failure to Remove Architectural Barriers in an Existing Facility*

72. The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9).

73. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id.* § 12182(b)(2)(A)(v).

74. Here, Johnson alleges that Ngo can easily remove the architectural barriers at the Donut Facility without much difficulty or expense, and that Ngo violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

75. In the alternative, if it was not "readily achievable" for Ngo to remove the Donut Facility's barriers, then Ngo violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### *Failure to Design and Construct an Accessible Facility*

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 14 of 24

76. On information and belief, the Donut Facility was designed or constructed (or both) after January 26, 1992--independently triggering access requirements under Title III of the ADA.

77. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

78. Here, Ngo violated the ADA by designing or constructing (or both) the Donut Facility in a manner that was not readily accessible to the physically disabled public, including Johnson, when it was structurally practical to do so.

### *Failure to Make an Altered Facility Accessible*

79. On information and belief, the Donut Facility was modified after January 26, 1992, independently triggering access requirements under the ADA.

80. The ADA also requires that facilities altered in a manner that affects (or could affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. *Id.*

81. Here, Ngo altered the Donut Facility in a manner that violated the ADA and was not readily accessible to the physically disabled public, including Johnson, to the maximum extent feasible.

### *Failure to Modify Existing Policies and Procedures*

82. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

83. Here, Ngo violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Donut Facility, when these modifications were

Case No. 5:14-CV-00121-EJD

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 15 of 24

1 | necessary to afford (and would not fundamentally alter the nature of) these goods, services,
2 | facilities, or accommodations.

3 | 84. Johnson seeks all relief available under the ADA (*i.e.,* injunctive relief, attorney
4 | fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

5 | 85. Johnson also seeks a finding from this Court (*i.e.,* declaratory relief) that Ngo
6 | violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or
Disabled Persons Act.

7

8 |
9 |

## XI. SIXTH CLAIM
### Disabled Persons Act
### (The Donut Facility)

10 | 86. Johnson incorporates the allegations contained in paragraphs 1 through 85 for this
11 | claim.

12 | 87. The Donut Facility is a place of public accommodation and/or places to which the
13 | general public is invited and, as such, they are obligated to comply with the provisions of the
14 | California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.* 925. The
15 | CDPA guarantees, inter alia, that persons with disabilities have the same right as the general
16 | public to the full and free use of the streets, highways, sidewalks, walkways, public
17 | buildings, public facilities, and other public places. California Civil Code § 54.

18 | 88. The CDPA also guarantees, inter alia, that persons with disabilities are entitled to
19 | full and equal access, as other members of the general public, to accommodations, advantages,
facilities, and privileges of covered entities. California Civil Code § 54.1(a)(1).

20 | 89. The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA,
21 | California Civil Code § 54.1(d).

22 | 90. Donut Defendants have violated the CDPA by, inter alia, denying and/or interfering
23 | with Johnson right to full and equal access as other members of the general public to the
24 | accommodations, advantages, and its related facilities due to his disability.

25 | 91. Pursuant to the remedies, procedures, and rights set forth in California Civil Code
26 | §§ 54.3 and 55, Johnson prays for judgment as set forth below.

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 16 of 24

## XII. SEVENTH CLAIM
### Unruh Civil Rights Act
### (The Donut Facility)

92. Johnson incorporates the allegations contained in paragraphs 1 through 91 for this claim.

93. The Donut Facility is a business establishment and, as such, must comply with the provisions of the Unruh Act, California Civil Code § 51 *et seq.*

94. The Unruh Act guarantees, *inter alia,* that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. California Civil Code § 51(b).

95. The Unruh Act also provides that a violation of the ADA, or of California state accessibility regulations, is a violation of the Unruh Act. California Civil Code § 51(f).

96. Donut Defendants have violated the Unruh Act by, *inter alia,* denying, or aiding or inciting the denial of, Johnson's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at the Donut Facilities.

97. Donut Defendants have also violated the Unruh Act by denying, or aiding or inciting the denial of, Johnsons rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

98. Pursuant to the remedies, procedures, and rights set forth in California Civil Code § 52, Johnson prays for judgment as set forth below.

## XIII. EIGHTH CLAIM
### Denial of Full and Equal Access to Public Facilities
### (The Donut Facility)

99. Johnson incorporates the allegations contained in paragraphs 1 through 98 for this claim.

100. Health and Safety Code § 19955(a) states, in part, that: California public

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 17 of 24

accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

101. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

102. Johnson alleges the Donut Facility is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Donut Facility was not exempt under Health and Safety Code § 19956.

103. Ngo's non-compliance with these requirements at the Donut Facility aggrieved (or potentially aggrieved) Johnson and other persons with physical disabilities. Accordingly, she seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

## XIV. NINTH CLAIM
### Americans with Disabilities Act of 1990
### *Denial of "Full and Equal" Enjoyment and Use*
### (The Mall)

104. Johnson incorporates the allegations contained in paragraphs 1 through 103 for this claim.

105. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

106. Schulze discriminated against Johnson by denying "full and equal enjoyment" and use of the goods, services, facilities, privileges or accommodations of the Mall during each visit and each incident of deterrence.

### *Failure to Remove Architectural Barriers in an Existing Facility*

107. The ADA specifically prohibits failing to remove architectural barriers, which

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9).

108. When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id.* § 12182(b)(2)(A)(v).

109. Here, Johnson alleges that Schulze can easily remove the architectural barriers at the Mall without much difficulty or expense, and that Schulze violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

110. In the alternative, if it was not "readily achievable" for Schulze to remove the Mall's barriers, then Schulze violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

### *Failure to Design and Construct an Accessible Facility*

111. On information and belief, the Mall was designed or constructed (or both) after January 26, 1992, independently triggering access requirements under Title III of the ADA.

112. The ADA also prohibits designing and constructing facilities for first occupancy after January 26, 1993, that aren't readily accessible to, and usable by, individuals with disabilities when it was structurally practicable to do so. 42 U.S.C. § 12183(a)(1).

113. Here, Schulze violated the ADA by designing or constructing (or both) the Mall in a manner that was not readily accessible to the physically disabled public, including Johnson, when it was structurally practical to do so.[31]

### *Failure to Make an Altered Facility Accessible*

114. On information and belief, the Mall was modified after January 26, 1992, independently triggering access requirements under the ADA.

115. The ADA also requires that facilities altered in a manner that affects (or could

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

affect) its usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2). Altering an area that contains a facility's primary function also requires adding making the paths of travel, bathrooms, telephones, and drinking fountains serving that area accessible to the maximum extent feasible. *Id.*

116. Here, Schulze altered the Mall in a manner that violated the ADA and was not readily accessible to the physically disabled public, including Johnson, to the maximum extent feasible.

### *Failure to Modify Existing Policies and Procedures*

117. The ADA also requires reasonable modifications in policies, practices, or procedures, when necessary to afford such goods, services, facilities, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

118. Here, Schulze violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Mall, when these modifications were necessary to afford (and would not fundamentally alter the nature of) these goods, services, facilities, or accommodations.

119. Johnson seeks all relief available under the ADA (*i.e.,* injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. § 12205.

120. Johnson also seeks a finding from this Court (*i.e.,* declaratory relief) that Schulze violated the ADA in order to pursue damages under California's Unruh Civil Rights Act or Disabled Persons Act.

### XV. TENTH CLAIM
### Disabled Persons Act
### (The Mall)

121. Johnson incorporates the allegations contained in paragraphs 1 through 120 for this claim.

122. The Mall is a place of public accommodation and/or places to which the general

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

public is invited and, as such, they are obligated to comply with the provisions of the California Disabled Persons Act ("CDPA"), California Civil Code § 54 *et seq.*

123. The CDPA guarantees, inter alia, that persons with disabilities have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places. California Civil Code § 54.

124. The CDPA also guarantees, inter alia, that persons with disabilities are entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of covered entities. California Civil Code § 54.1(a)(1).

125. The CDPA also provides that a violation of the ADA is *a per se* violation of CDPA, California Civil Code § 54.1(d).

126. Schulze has violated the CDPA by, inter alia, denying and/or interfering with Johnson right to full and equal access as other members of the general public to the accommodations, advantages, and its related facilities due to his disability.

127. Pursuant to the remedies, procedures, and rights set forth in California Civil Code §§ 54.3 and 55, Johnson prays for judgment as set forth below.

## XVI. ELEVENTH CLAIM
### Unruh Civil Rights Act
### (The Mall)

128. Johnson incorporates the allegations contained in paragraphs 1 through 127 for this claim.

129. The Mall is a business establishment and, as such, must comply with the provisions of the Unruh Act, California Civil Code § 51 *et seq.*

130. The Unruh Act guarantees, *inter alia,* that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever within the jurisdiction of the State of California. California Civil Code § 51(b).

131. The Unruh Act also provides that a violation of the ADA, or of California state accessibility regulations, is a violation of the Unruh Act. California Civil Code § 51(f).

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

132. Schulze has violated the Unruh Act by, *inter alia,* denying, or aiding or inciting the denial of, Johnson's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered at the Mall.

133. Schulze also violated the Unruh Act by denying, or aiding or inciting the denial of, Johnsons rights to equal access arising from the provisions of the California state accessibility regulations and the ADA.

134. Pursuant to the remedies, procedures, and rights set forth in California Civil Code § 52, Johnson prays for judgment as set forth below.

## XVII. TWELFTH CLAIM
### Denial of Full and Equal Access to Public Facilities
### (The Mall)

135. Johnson incorporates the allegations contained in paragraphs 1 through 134 for this claim.

136. Health and Safety Code § 19955(a) states, in part, that: California public accommodations or facilities (built with private funds) shall adhere to the provisions of Government Code § 4450.

137. Health and Safety Code § 19959 states, in part, that: Every existing (non-exempt) public accommodation constructed prior to July 1, 1970, which is altered or structurally repaired, is required to comply with this chapter.

138. Johnson alleges the Mall is a public accommodation constructed, altered, or repaired in a manner that violates Part 5.5 of the Health and Safety Code or Government Code § 4450 (or both), and that the Mall was not exempt under Health and Safety Code § 19956.

139. Schulze's non-compliance with these requirements at the Mall aggrieved (or potentially aggrieved) Johnson and other persons with physical disabilities. Accordingly, he seeks injunctive relief and attorney fees pursuant to Health and Safety Code § 19953.

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 22 of 24

## PRAYER FOR RELIEF

WHEREFORE, Johnson prays judgment against Hwang for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Hwang violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expenses, and costs of suit.

5. Interest at the legal rate from the date of the filing of this action.


## PRAYER FOR RELIEF

WHEREFORE, Johnson prays judgment against Ngo for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Ngo violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expenses, and costs of suit.

5. Interest at the legal rate from the date of the filing of this action.

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 23 of 24

## PRAYER FOR RELIEF

WHEREFORE, Johnson prays judgment against Schulze for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Schulze violated the ADA for the purposes of Unruh Act or Disabled Persons Act damages.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expenses, and costs of suit.

5. Interest at the legal rate from the date of the filing of this action.

Dated: 01-09-14

_____
Irene Karbelashvili, Attorney for
Plaintiff Richard Johnson

## *DEMAND FOR JURY*

Johnson hereby demands a jury for all claims for which a jury is permitted.

Dated: 01-09-14

_____
Irene Karbelashvili, Attorney for
Plaintiff Richard Johnson

**Case No. 5:14-CV-00121-EJD**

First Amended Complaint for Preliminary and Permanent Injunctive Relief and Damages: Denial of Civil Rights and Access to Public Facilities to Physically Disabled Persons, Per Federal and California Statutes (Including Civil Code §§ 51, 52, 54, 54.1, 54.3, and § 55; and Health & Safety Code §§ 19955 et seq.); Injunctive Relief Per Title III, Americans with Disabilities Act of 1990

Page 24 of 24